# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-22785-CIV-MOORE/SIMONTON

ROYAL CARIBBEAN CRUISES, LTD.,

    Plaintiff,

vs.

EDUARDO WHITEFIELD, through
MARIA INES MURILLO MARTINEZ,
as personal representative,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss (dkt # 33).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This case is a declaratory judgment action involving the right of a cruise ship employee to receive maintenance and cure benefits. Decedent Eduardo Whitefield ("Whitefield") was employed by Plaintiff Royal Caribbean Cruises, Ltd. ("Royal Caribbean") until February 27, 2000. After Whitefield's employment ended, he received maintenance and cure benefits from Royal Caribbean for a number of health issues. In a letter dated February 28, 2008 (dkt # 25-2), Royal Caribbean terminated Whitefield's maintenance and cure benefits on grounds that he had reached maximum medical improvement.

On October 6, 2008, Royal Carribean filed the instant Complaint (dkt # 1) seeking a

declaration that it was under no obligation to continue Whitefield's maintenance and cure benefits after they were terminated in February of 2008. On October 15, 2008, Whitefield filed a Complaint in the Circuit Court of the 11th Judicial Circuit in and for Dade County, Florida, seeking relief under the Jones Act,[1] 46 U.S.C. § 30104, and under general maritime law for failure to provide maintenance and cure benefits. Whitefield's Jones Act claim alleges negligent failure to provide adequate medical care. Whitefield died on February 4, 2009. On July 14, 2009, Royal Caribbean filed an Amended Complaint (dkt # 26) substituting Whitefield's wife, Maria Ines Murillo Martinez ("Murillo Martinez"), as Defendant. Murillo Martinez is the personal representative of Whitefield's estate.

## II. ANALYSIS

### A. Dismissal of Declaratory Judgment Action Based on a Parallel State Court Action

Defendant claims that this case should be dismissed because there is a similar action pending in state court which permits this Court to properly exercise its discretion to dismiss the case. "The Declaratory Judgment Act is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005) (citations omitted). "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Id. (citations omitted). "[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Id. (citation

---

[1] "A Jones Act claim is an *in personam* action for a seaman who suffers injury in the course of employment due to negligence of his employer, the vessel owner, or crew members." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001).

omitted). "The Supreme Court has warned that '[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.'" Id. (citation omitted). Moreover, "the Supreme Court's decision in Wilton . . . vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action." Atl. Cas. Ins. Co. v. GMC Concrete Co., Inc., No. 07-CV-0563-WS-B, 2007 WL 4335499, at *2 (S.D. Ala. 2007) (quoting Prudential Ins. Co. of Am. v. Doe, 140 F.3d 785, 789 (8th Cir. 1998)).

In Ameritas, the Eleventh Circuit provided direction concerning the exercise of discretion by district courts when deciding whether to entertain declaratory judgment actions when there is parallel state litigation pending. Ameritas, 411 F.3d at 1328. When deciding whether to entertain a declaratory judgment action, a court should consider:

> (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action amounts to procedural fencing; (v) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action.

Atl. Cas. Ins. Co., 2007 WL 4335499, at *2 (citing Ameritas, 411 F.3d at 1331). "A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues. It is an abuse of discretion, however, to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist." Fed. Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1247 (11th Cir. 2000).

1. Dismissing a Federal Declaratory Judgment Action Concerning a Maintenance and Cure Claim when a Jones Act Claim is Pending in State Court

Defendant claims that this action should be dismissed in favor of the pending litigation in state court. As an initial matter, other federal Courts of Appeals, including the Fourth, Fifth and Ninth Circuits, have developed multi-prong tests for evaluating the dismissal of declaratory judgment actions in light of a pending state court case. See Motorists Mut. Ins. Co. v. Frazier, 623 F. Supp. 2d 727, 731 (S.D.W.Va. 2009) (citing Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994); Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937)); Union Ins. Co. v. Nunnery, No. 3:08cv693 DPJ-JCS, 2009 WL 1421055, at *2-3 (S.D. Miss. 2009) (citing Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 387 (5th Cir. 2000); Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc., 996 F.2d 774, 776 (5th Cir. 1993); St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir. 1994)); Cont'l Cas. Co. v. Fenigstein & Kaufman, No. CV 08-6333 AHM, 2009 WL 1444796, at *2 (C.D. Ca. 2009) (citing Gov't Employees v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998)). However, despite these well-established standards, some courts in these circuits have opted to take a modified approach when the federal declaratory judgment action involves a maintenance and cure claim and a pending state court action includes a Jones Act claim, where both cases grow out of a single transaction or accident. See Ocean Alaska, LLC v. Hutchinson, No. C07-294JLR, 2008 WL 3103394 (W.D. Wash. 2008); Lady Deborah, Inc. v. Ware, 855 F. Supp. 871 (E.D. Va. 1994); Belle Pass Towing Corp. v. Cheramie, 763 F. Supp. 1348 (E.D. La. 1991).

When a federal declaratory judgment action concerning maintenance and cure is before a district court and a case that includes a Jones Act claim is pending in state court, the factors

4

germane to determining whether dismissal is within the Court's discretion are unique and may be distinct from the considerations often relevant to dismissal of a declaratory judgment action under other circumstances. One such factor is the propriety and practicality of conducting a trial on the maintenance and cure claim under a district court's admiralty jurisdiction, which would be conducted without a jury,[2] while the Jones Act claim and would be tried in state court with a jury. In such cases, the state trial may occur after the federal trial has concluded, creating a likelihood that some findings in the federal case might be res judicata in the state court case and could potentially complicate an award of damages in whichever case goes to trial last. See Fitzgerald v. United States Lines Co., 374 U.S. 16, 18 (1963); Belle Pass, 763 F. Supp. at 1355. These difficulties are reasons why, under such circumstances, one trier of fact may be preferable to resolve claims arising out of a single transaction or accident. See Fitzgerald, 374 U.S. at 21. Furthermore, there is an efficiency concern because the federal and state cases may involve duplicative evidence and witnesses.

Another relevant consideration is the role the Saving to Suitors Clause plays when a federal declaratory judgment action involves a maintenance and cure claim and a pending state court action includes a Jones Act claim. The Saving to Suitors Clause provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. "Stated differently, the saving to suitors clause establishes the right of a party *to choose whether to proceed within a court's*

---

[2] The Seventh Amendment does not provide for jury trials in admiralty cases. Waring v. Clarke, 46 U.S. (5 How.) 441, 459 (1847).

admiralty jurisdiction or general civil jurisdiction when both admiralty and non-admiralty federal jurisdiction exist." St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc., 561 F.3d 1181, 1195 n.5 (11th Cir. 2009) (Wilson, J., concurring). The Saving to Suitors Clause "embodies a presumption in favor of jury trials and common law remedies in the forum of the claimant's choice." Beiswenger Enters. Corp. v. Carletta, 86 F.3d 1032, 1037 (11th Cir. 1996). In a case where a district court conducts a bench trial in a declaratory action concerning maintenance and cure while a state court Jones Act case is pending, the Saving to Suitors Clause is undermined to the extent that the court's findings are res judicata to the state court case. This is because the seaman would be deprived of a jury on such findings, thus raising the concern that he will be deprived of his saving to suitors rights after he has exercised those rights by filing an action in state court. Belle Pass, 763 F. Supp. at 1355.

It bears mentioning, however, that a seaman who is a defendant in a federal declaratory judgment action may protect his saving to suitors rights by filing a Jones Act counterclaim in federal court. Under these circumstances, the seaman would be entitled to a jury trial on the maintenance and cure claim and the Jones Act claim, even though the maintenance and cure claim is within the court's admiralty jurisdiction and would not otherwise be triable to a jury. Fitzgerald, 374 U.S. at 21 (holding that a district court must conduct a jury trial when a maintenance and cure claim is joined with a Jones Act claim).

The issue of whether the parties are acting in bad faith is also a significant consideration in determining whether to dismiss a federal declaratory judgment action for maintenance and cure in favor of a pending state court action that includes a Jones Act claim. See Belle Pass, 763 F. Supp. at 1355 (finding that bad faith is a dispositive consideration in

deciding whether a federal maintenance and cure declaratory judgment action should be dismissed when a state court Jones Act claim is pending). An employer in a maintenance and cure claim has an interest in resolving the case as soon as possible to avoid consequential and punitive damages if it turns out the claim was wrongly refused. Lady Deborah, 855 F. Supp. at 873. However, the employer may also be forum shopping by seeking a federal forum for a case that might typically be heard in state court and may not be removable if filed there first. Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 455 (2001) (stating that a Jones Act claim is not removable even when the parties are diverse). On the other hand, a seaman with a maintenance and cure claim typically has the option to choose a federal or state forum if the maintenance and cure claim is combined with other related claims.[3] Id. at 873-74. Nevertheless, a seaman may also be forum shopping based on a desire to litigate in a state court with a slower docket to secure a greater opportunity to build his medical case. While the issue of bad faith is an important consideration, it is often a "question[] of intent[,] and the circumstantial evidence thereof can be plausibly interpreted in either direction." Lady Deborah, 855 F. Supp. at 876.

Applying these considerations to this case, it is likely that some findings in the federal case will be res judicata to the state case if the federal case goes to trial first. The crux of the federal claim appears to be whether Whitefield had reached maximum medical improvement, the point at which Royal Caribbean was entitled to terminate his maintenance and cure

---

[3] "A maritime tort claim may be asserted in federal court without invoking the court's admiralty jurisdiction if the claim falls within the court's supplemental jurisdiction." Murphy v. Fla. Keys Elec. Coop. Ass'n, Inc., 329 F.3d 1311, 1319 (11th Cir. 2003). Where a complaint alleges a Jones Act violation, the maintenance and cure claim can be entertained under the court's supplemental jurisdiction. Id.

benefits. Based on the pleadings, Royal Caribbean does not dispute that Whitefield was entitled to maintenance and cure prior to Royal Caribbean's termination of benefits. Therefore, it does not appear that the federal declaratory judgment action will require a factual resolution of whether Whitefield was injured while in the service of the vessel. See First Shipmor Assocs. v. Musa, No. 92-4675 (FMS), 1993 WL 181382, at * 2 (N.D. Cal. 1993); but cf., Belle Pass, 763 F. Supp. 1355.

Nevertheless, there is still a possibility that a damages award in the federal case could result in too much or too little recovery in the state case. It would not be difficult for this Court to clearly specify the components of a damage award on the maintenance and cure claim. In the state case, these amounts could theoretically be deducted from any damages award to avoid duplicative recovery. Even with the benefit of a special verdict form, however, it is not always possible to determine "exactly what went into the damages awarded by a jury-- how loss or earning power was calculated, how much was allowed for medical expenses and pain and suffering, how much was allowed for actual lost wages, and how much, if any, each of the recoveries was reduced by contributory negligence."[4] Fitzgerald, 374 U.S. at 18. This lack of clarity could make it difficult or impossible to determine which portion of a damages award in the federal declaratory judgment action is duplicative of a jury award in the state case. Furthermore, evidence and witnesses in the maintenance and cure action pertaining to damages arising from the denial of maintenance and cure benefits would likely be duplicative

---

[4] "[A] seaman's maintenance and cure claim cannot be reduced even if he is shown to be contributorily negligent." Costa Crociere, S.p.A. v. Rose, 939 F. Supp. 1538, 1558 (S.D. Fla. 1996) (citing Fitzgerald, 374 U.S. at 19). Under certain circumstances, it may therefore be important to ascertain the amount that a damages award in a Jones Act case is reduced because of contributory negligence to accurately determine the amount awarded in the maintenance and cure claim that may be duplicative.

to some extent of evidence pertaining to damages under the Jones Act claim. Under the present circumstances, these difficulties militate in favor of dismissing the declaratory judgment action.

Defendant's rights under the Saving to Suitors Clause also weigh in favor of dismissal. A seaman can protect his right to common law remedies under the Saving to Suitors Clause by either (1) bringing a Jones Act claim in state court (assuming the absence of res judicata from a parallel federal court declaratory judgment action), (2) bringing a Jones Act and maintenance and cure claim in federal court, or (3) bringing a Jones Act counterclaim to a federal declaratory judgment action for maintenance and cure. Each of these courses of action ensure that a party exercising his saving to suitors rights is fully able to avail himself of available common law remedies. These actions do not, however, ensure that the party will have his choice of forum.

While some courts have indicated that the Saving to Suitors Clause entitles a party to common law remedies but not to a choice of forum, in the Eleventh Circuit, the Saving to Suitors Clause gives rise to a presumption that a party who exercises his saving to suitors rights is entitled to his choice of forum.[5] Suzuki of Orange Park, Inc. v. Shubert, 86 F.3d

---

[5] In Beiswenger, the Court addressed the inherent tension between the Limitation Act and the Saving to Suitors Clause. The Limitation Act encouraged shipbuilding and investment by "'exempting innocent shipowners from liability, beyond the amount of their interest.'" Beiswenger, 86 F.3d at 1036 (quoting Norwich & N.Y. Transp. Co. v. Wright, 80 U.S. (13 Wall.) 104, 121 (1871)). Federal courts have exclusive jurisdiction to determine whether a vessel owner is entitled to limited liability. Id. The tension with the Saving to Suitors clause arises from the shipowner's absolute right to claim a liability cap and to have the claim resolved in a federal forum and a seaman's right to seek common law remedies in the forum of his choice. Id. at 1036-37. In attempting to resolve this tension, the Beiswenger Court identified two situations in which a seaman must be permitted to litigate liability and damages issues in a forum of his own choosing. These cases were limited to circumstances where a seaman's saving to suitors right could be exercised without compromising the shipowner's rights under the Limitation Act. These two circumstances in which a seaman must be allowed to litigate in the forum of his choice,

1060, 1063 (11th Cir. 1996); Beiswenger Enters. Corp. v. Carletta, 86 F.3d 1032, 1037 (11th Cir. 1996); contra First Shipmor, 1993 WL 181382, at * 2. Thus, in cases where a party whose saving to suitors rights have been triggered may select a forum without infringing upon superseding constitutional or statutory rights of the other parties, and where the presumption in favor of the party's choice of forum has not been rebutted by other compelling interests, that party should be permitted to proceed in the forum of his choice.[6] Here, Murillo Martinez's saving to suitors rights are not in conflict with any of Royal Carribean's superseding rights and Royal Carribean has not presented evidence sufficient to overcome the presumption in favor of Murillo Martinez's choice of forum, such as bad faith for example. Therefore, Murillo Martinez's saving to suitors rights weigh in favor of dismissal.

There is no evidence of bad faith by either Party. While it is true that Royal Carribean may be forum shopping by racing to the courthouse to obtain a federal forum for a case that might otherwise be non-removable, Royal Carribean may also simply be protecting its interests by selecting the forum that it believes will provide the most timely resolution of the claim. Absent specific evidence, either inference is warranted because this Court has no

---

however, are not the source of the presumption in favor of a seaman's right to choose the forum in this Circuit. Rather, the right of a seaman to choose a forum under the circumstances identified by the Beiswenger Court were established because, under the Saving to Suitors Clause, there is a presumption of a seaman's right to select a forum. Thus, this presumption under the Saving to Suitors Clause is applicable as a general principle and is not limited to cases involving the Limitation Act.

[6] This Court notes that a district court's discretion to dismiss a federal declaratory judgment action in favor of pending state court litigation militates against adopting a test that makes dismissal mandatory rather than discretionary under certain circumstances. See Lady Ware, 855 F. Supp. at 875 (declining to adopt a test for dismissing federal declaratory judgment actions for maintenance and cure that would deprive the district court of its discretion under certain circumstances). Here, this Court's discretion remains intact because deciding whether a presumption in favor of a choice of forum has been rebutted requires the Court to exercise its discretion in assessing the weight of counterveiling factors.

means other than speculation to ascertain Royal Carribean's intent. Moreover, given that Whitefield is deceased, there is no reason to believe that the state court claim is intended to permit more time to build a medical case. Even if this may have been a motivating factor at some point, that possibility is now moot. Therefore, there is no evidence of bad faith by either Party.[7]

> 2. Applicability of the <u>Ameritas</u> Factors in Dismissing a Federal Declaratory Judgment Action Concerning a Maintenance and Cure Claim when a Jones Act Claim is Pending in State Court

The factors considered in section II(A)(1) of this Order could plausibly be construed as falling within the scope of the <u>Ameritas</u> factors. However, this Court does not find it necessary to review each of the above factors to determine within which of the <u>Ameritas</u> factors they are most neatly encompassed. Nevertheless, this Court will apply the <u>Ameritas</u> factors to the extent each is relevant to the facts of this case.[8]

> a. The State's Interest in Deciding the Matter

The claim on which Royal Caribbean seeks a declaration of rights is based on general maritime law. Prior to his death, it appears that Whitefield resided in, and was a citizen of, Honduras. Royal Caribbean is a Liberian Corporation with its principal place of business in Florida. Florida does not have the same interest in resolving a claim based on general

---

[7] Under some circumstances, the order in which the Parties filed the federal and state cases may be relevant to whether dismissal of the federal action in favor of the state case is appropriate. This is particularly true where the time that elapsed between the filings would prejudice the plaintiff in the federal declaratory judgment action if the action were dismissed in favor of parallel state court litigation. The order in which the cases were filed could also have some bearing on bad faith. Here, this Court finds that the order in which the cases were filed and the time between the filings do not raise issues of prejudice or bad faith.

[8] <u>Ameritas</u> factors that are not addressed are deemed to lack meaningful relevance under the circumstances.

maritime law as it would for a claim arising under Florida law. While Florida may have an interest in adjudicating the rights of a foreign corporation with its principal place of business in Florida, here, Royal Caribbean seeks a federal forum and thus eschews any benefit that may accrue to it by litigating in Florida's state courts. Therefore, the State does not have a significant interest in deciding this matter. This weighs against dismissal.

      b. Whether Judgment in Federal Action Would Completely Resolve the Controversy

Royal Carribean seeks a declaration that it was not obligated to provide Whitefield with maintenance and cure benefits after February 28, 2008. In the state court case, Murillo Martinez seeks damages under the Jones Act for Royal Caribbean's negligent failure to provide Whitefield with adequate medical care and for Royal Caribbean's failure to provide maintenance and cure benefits after February 28, 2008. Given Murillo Martinez's additional Jones Act claim in state court, it does not appear that a judgment in the federal action would completely resolve the controversy because the liability and damages issues presented by the Jones Act claim are distinct from those presented by the maintenance and cure claim. This weighs in favor of dismissal.

      c. Whether the Declaratory Judgment Action Would Clarify the Parties' Legal Relations

As stated above, resolution of the declaratory judgment action may give rise to complex res judicata issues that would not serve to clarify the legal relations of the Parties. This weighs in favor of dismissal.

      d. Whether the Federal Action Amounts to Procedural Fencing

This issue was discussed above in addressing whether Royal Carribean was engaged in

forum shopping. This Court concluded that there was no evidence to support forum shopping by Royal Carribean. This weighs against dismissal.

### e. Whether a Ruling in the Federal Action Would Increase Friction Between Federal and State Courts or Otherwise Encroach on State Proceedings

As discussed above, resolution of the declaratory judgment action may give rise to complex or intractable res judicata issues, particularly with respect to damages. These issues may be alleviated or eliminated if a single fact finder hears the evidence and decides all damage issues. This weighs in favor of dismissal.

### f. Whether a Superior Alternative Remedy Exists

All the relief that Murillo Martinez seeks is available in state court. While Royal Carribean may believe that its rights will be better protected in federal court, this Court finds that, under the totality of the circumstances, resolution of all of Murillo Martinez's claims before a single fact finder is a remedy superior to the remedies available by permitting the federal declaratory judgment action to proceed while there is parallel state court litigation pending. This weighs in favor of dismissal.

### g. Whether Federal Common or Statutory Law Requires Resolution of the Declaratory Action

Florida's state courts are courts of general jurisdiction and are equipped to hear Murillo Martinez's claims. While the maintenance and cure claim requires the application of general maritime law, this much litigated area provides the state courts with ample guidance. Therefore, the federal common or statutory law does not require resolution of the declaratory action. This weighs in favor of dismissal.

### III. CONCLUSION

After considering the factors relevant to dismissing a federal declaratory judgment action for maintenance and cure when a Jones Act claim is pending in state court, and upon applying the Ameritas factors, this Court concludes that dismissal of Royal Carribean's declaratory judgment action is warranted. Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (dkt # 33) is GRANTED. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of October, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record